IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SCANSOURCE, INC. :

 :

 v. : Civil Action No. DKC 11-0380

 :

THE THURSTON GROUP, LLC :

 :

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract case is the motion to dismiss filed by Defendant, The Thurston Group, LLC, (ECF No. 6) and the motion for a preliminary injunction filed by Plaintiff ScanSource, Inc. (ECF No. 7). The issues have been fully briefed and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the reasons that follow, Defendant's motion to dismiss will be granted and Plaintiff's motion for preliminary injunction will be denied as moot.

## I. Background

Plaintiff ScanSource, Inc. alleges the following facts in its complaint: ScanSource is a publicly traded corporation, organized and existing under the laws of South Carolina, with its principal office in Greenville, South Carolina. (ECF No. 1 ¶ 2). ScanSource is an international distributor of specialty technology products and conducts business across the United

States, including in Baltimore. (*Id.*). Defendant, the Thurston Group, LLC, ("Thurston") is a private computer consulting company with its principal place of business in Prince George's County, Maryland. (*Id.* ¶ 3).

On February 16, 2010, ScanSource and Thurston entered into the Independent Contractor Agreement ("Agreement") whereby Thurston was obligated to provide installation, maintenance, and training on Avaya Systems for ScanSource in exchange for payment. (*Id.* ¶ 7). The Agreement included a Non-Compete Clause that stated:

> During the term of this Agreement and for a period of one year following the expiration of this Agreement, Contractor shall not serve, represent, market or promote for any competitors of the Company, including without limitation the following businesses: _____ or to any customers of the Company without the prior written authorization of the Company. Contractor shall not for any reason on Contractor's own behalf or on behalf of any person, firm, partnership, association, corporation, limited liability company or business organization, entity or enterprise, other than the Company, solicit, contact, or call upon any customer or prospective customer of the Company, or any representative of any customer or prospective customer of the Company, with a view to sell or provide any deliverable or service competitive with any deliverable or services sold or provided or under development by the Company during this agreement and for the year immediately following the termination of this Agreement, provided that the restrictions as set forth in this paragraph shall apply only to

2

> customers or prospective customers of the
> Company, or representatives of customers or
> prospective customers of the Company, with
> which Contractor had contact during the term
> of this Agreement as a result of being
> retained by the Company.
>
> Each of the parties hereto agrees that,
> while performing Services under this
> Agreement, and for a period of two years (24
> months) following the termination of this
> Agreement, neither party will, except with
> the other party's written approval, solicit
> or offer employment to the other party's
> employees or staff engaged in any efforts
> under this Agreement.[1]

ScanSource alleges that the Agreement was not terminated and remains in effect. (*Id.* ¶ 12).

At some unidentified time, Verizon Communications, Inc., a communications provider that does business with ScanSource and one of its business partners, Alliance Technology, LLC, solicited bids for a contract for services in Aberdeen, Maryland. (*Id.* ¶¶ 12-13). Alliance Technology and Thurston both submitted bids for the Verizon contract. (*Id.* ¶¶ 13-14). On January 31, 2011, ScanSource sent a cease and desist letter

---

[1] ScanSource excerpts a portion of the non-compete clause in its complaint (ECF No. 1 ¶ 10). A full copy of the agreement was attached as exhibit 1 to Thurston's motion to dismiss (ECF No. 6-1) and the entirety of the non-compete clause was taken from this exhibit. Courts may properly consider documents attached to the complaint as well as documents not attached but referenced therein when testing the legal sufficiency of a pleading. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3$^d$ ed. 2004 and Supp. 2007)).

to Thurston advising Thurston that its activities related to the Verizon Aberdeen contract were a breach of the Agreement and that if Thurston continued its actions, ScanSource would pursue legal action. (*Id.* ¶¶ 15-17). Thurston did not respond to the letter and was awarded the Verizon contract. (*Id.* ¶¶ 18, 21). ScanSource alleges that the value of the Verizon contract for ScanSource is approximately $559,000. (*Id.* ¶ 22).

ScanSource filed its complaint on February 11, 2011, and alleges that Thurston is liable on three counts. In count I, ScanSource alleges that Thurston "has violated and/or intends to violate the provisions of the non-compete clause." (*Id.* ¶ 26). In count II, ScanSource alleges that Thurston learned of the Verizon contract from its work for ScanSource and used information from that work to bid on and win the award and that such conduct constitute unfair competition. (*Id.* ¶¶ 28-32). Finally in count III, ScanSource alleges that Thurston "tortiously interfered with the economic advantage of ScanSource by, *inter alia*, bidding on and being awarded the Verizon Aberdeen contract in direct violation of the Non-Compete clause in section 5 of the Agreement." (*Id.* ¶ 35). For all counts, ScanSource seeks only money damages in the amount of $559,000.00 and interests and costs.

On, March 10, 2011, Thurston filed a motion to dismiss ScanSource's complaint in its entirety. (ECF No. 6). While Thurston's motion was pending, ScanSource filed a motion for a preliminary injunction. (ECF No. 7).

**II. Motion To Dismiss**

**A. Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B. Analysis**

Thurston contends that its motion to dismiss raises a single issue: whether its competition with Alliance Technolgoy, Inc., a third party not named in its agreement with Plaintiff, for a contract with Verizon Communications constitutes a breach of the parties' agreement or a tort. (ECF No. 6, at 1). Thurston proceeds to argue that for each count ScanSource has failed to state a claim. In response, ScanSource argues that its complaint contains sufficient factual allegations to state its claims. (ECF No. 9).

Although Thurston's framing of the issue presented is perhaps too simplistic, ScanSource's complaint does suffer from a dearth of factual allegations. ScanSource attempts to remedy this defect by inserting additional facts and allegations into its opposition to the motion to dismiss, but the court must consider the complaint as it was filed and not with ScanSource's subsequent annotations and explanations. As discussed in detail below, Plaintiff's complaint does not contain sufficient factual allegations to state a claim for any of the counts alleged.

**1. Breach of Contract Claim**

Without conceding that the agreement is valid and enforceable, Thurston argues that ScanSource has not stated a claim for breach of the contract as written. Specifically,

7

Thurston argues that ScanSource has not alleged a breach of the non-compete clause because it has not alleged "that the Thurston Group served, represented, marketed, or promoted for any competitors of ScanSource or to any customers of ScanSource." (ECF No. 6, at 5). Nor, Thurston contends, does the complaint allege that the Thurston Group solicited, contacted, or called upon any customer or prospective customer of ScanSource; the only alleged competition is with Alliance Technology. (*Id.*). Thurston also argues that the non-compete clause is unenforceable.

In its opposition to the motion to dismiss, ScanSource argues that in the course of performing the agreement, Thurston was made aware of ScanSource's business practices, the fact that Verizon Communications was a customer of ScanSource, and that Thurston did not obtain prior approval from ScanSource before soliciting Verizon's business. (ECF No. 9). ScanSource also argues that the non-compete clause is enforceable.

In order to state a claim for breach of contract, a plaintiff must plead the existence of the contract, its breach, and the damages caused by such breach. *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48 (2009).[2] ScanSource's complaint

---

[2] Both parties have relied on Maryland contract law in their arguments. The agreement contains a choice of law provision,

8

pleads the existence of a contract, but it does not plead facts sufficient to establish a breach. Facts contained in ScanSource's opposition to the motion to dismiss but not within the complaint itself cannot be considered. In order to establish a breach, ScanSource would need to plead facts sufficient to make it plausible that Thurston served, represented, marketed, or promoted for a competitor of ScanSource or that it solicited, contacted, or called upon any customer or potential customer of ScanSource with a view to sell or provide any deliverable or service competitive with any deliverable or services sold or provided or under development by ScanSource. Nowhere in the complaint does ScanSource identify any of its competitors, nor does the contract itself identify Verizon as a competitor of ScanSource. ScanSource now argues that Verizon was a customer, but the complaint states only that ScanSource does business with Verizon; it does not explain the nature of the relationship. (*See* ECF No. 1 ¶ 12). Similarly, the complaint does not allege what the services or deliverables

---

however, specifying "this Agreement shall be construed in accordance with the laws of the State of South Carolina." (ECF No. 6-1, at ¶ 13). Fortunately, it makes little practical difference because the requirements for stating a breach of contract claim under Maryland and South Carolina law are the same. *See RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 658 (2010).

Thurston offered to Verizon were or that the same services were offered by ScanSource. The conclusory statement that "The Thurston Group contacted Verizon with a view to sell or provide a deliverable or service in competition with ScanSource" (ECF No. 1 ¶ 14), without any further factual allegations, is insufficient to state a breach of any provision of the contract.

Because ScanSource has not stated a claim for breach of the contract, it is not necessary to consider whether the non-compete clause is enforceable at this time.

### 2. Unfair Competition

Thurston argues that ScanSource has not stated a claim for unfair competition because the complaint is devoid of any facts even to suggest that it committed fraud, deceit, trickery, or unfair methods. (ECF No. 6, at 8). Thurston also argues that the claim fails because the complaint does not contain any allegations that Thurston competed, unfairly or otherwise, with ScanSource. (*Id.*). ScanSource argues in response that it has included sufficient factual allegations to survive a motion to dismiss and reiterates that "the Thurston Group did, indeed, use information from ScanSource to compete against both ScanSource and Alliance Technology." (ECF No. 9, at 12).

Maryland recognizes the tort of unfair competition to prevent one business from "damaging or jeopardizing another's

business by fraud, deceit, trickery or unfair methods of any sort." *Balt. Bedding Corp. v. Moses*, 182 Md. 229, 236-37, (1943). Maryland courts have been hesitant to establish specific requirements for the tort, instead abiding by the principle that "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances. Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception." *Id.; see also Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 891 (4th Cir. 1992); *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F.Supp.2d 837, 852-53 (D.Md. 2005); *Electrs. Store, Inc. v. Cellco P'ship*, 127 Md.App. 385, 406-07, *cert. denied*, 356 Md. 495 (1999).

ScanSource alleges only that Thurston learned of the Verizon contract through its work for ScanSource, that it used information obtained through that work to secure the bid, and that it should have known this was improper. (ECF No. 1 ¶¶ 28-30). If ScanSource's complaint also alleged that it had bid on the Verizon contract, one might conclude from these allegations that Thurston's method was unfair and harmful to ScanSource's business. Absent such allegations, there is no basis to conclude that Thurston's actions constituted unfair competition.

11

### 3. Tortious Interference With Economic Relations

Finally, Thurston argues that the claim for tortious interference is insufficiently pleaded.

Under Maryland law a claim for the tort of intentional interference with economic relations has the following elements: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants; and (4) actual damage and loss resulting." *Berlyn, Inc. v. Gazette Newspapers*, 223 F.Supp.2d 718, 741 (D.Md. 2002) (citing *Alexander & Alexander v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635 (1994), *aff'd by*, 73 F.App'x 576 (2003). The tort requires intentional acts "done with the unlawful purpose to cause . . . damage and loss to the plaintiffs in their lawful business, without right or justifiable cause on the part of the defendants which constitutes malice[.]" *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 655 (1994) (internal quotations omitted). "Wrongful or unlawful acts include common law torts and violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *K & K Mgmt. v.*

*Lee*, 316 Md. 137, 166 (1989) (internal quotations omitted). The tort does not lie simply because the defendant's breach of contract "would foreseeably impinge upon a contracting party's economic relations with others." *Alexander & Alexander Inc.*, 336 Md. at 656.

ScanSource has not complied with the pleading standards required by *Twombly* and *Iqbal* because it has not alleged any facts to demonstrate that Thurston acted with the intent to interfere with ScanSource's business relations. *See Miller v. Montgomery Cnty. Md.*, No. AW-09-3137, 2010 WL 3894500, at *14 (D.Md. Sept. 29, 2010) (granting motion to dismiss tortious interference with business relation claim where plaintiff failed to make a showing of defendant's intention to damage plaintiff's commercial relationships); *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F.Supp.2d at 850-51 (dismissing claim for tortious interference where plaintiffs asserted that defendants acted with "the intent to cause economic harm and injury to [plaintiff's] business" but offered no facts to explain how they arrived at that conclusion). Nor does ScanSource's complaint allege facts to explain the nature or extent of the alleged interference with ScanSource's economic relationship. ScanSource has not alleged that it sought to obtain the bid from Verizon and it has not identified Alliance as a direct affiliate

13

such that one could plausibly conclude that harm to Alliance directly affects ScanSource. For all these reasons, ScanSource has failed to state a claim for tortious interference with economic relations.

**III. Motion for Preliminary Injunction**

Because all counts of ScanSource's complaint will be dismissed, ScanSource's motion for a preliminary injunction is moot.[3]

**IV. Conclusion**

For the foregoing reasons, Thurston's motion to dismiss will be granted and ScanSource's motion for a preliminary injunction will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

[3] ScanSource's motion was also flawed in that preliminary injunctions are typically employed to obtain temporary or immediate relief for a party prior to a final decision granting a permanent injunction, but Plaintiff's complaint sought only monetary damages and not injunctive relief. Where the alleged harm is entirely compensable with monetary relief there is no basis for imposing a preliminary injunction.