IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

SCANSOURCE, INC.                :
                                :
    v.                          :   Civil Action No. DKC 11-0380
                                :
THE THURSTON GROUP, LLC         :
                                :

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract case is the motion to dismiss Plaintiff's amended complaint filed by Defendant The Thurston Group (ECF No. 18). The issues have been fully briefed, and the court now rules, no hearing deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied.

**I.    Background**

Before the court is the second attempt of Plaintiff ScanSource to plead viable breach of contract claims against Thurston. Plaintiff's initial attempt was dismissed for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (ECF Nos. 15-16).

ScanSource alleges that it entered into the "Independent Contract Agreement" with Thurston on February 16, 2010, whereby Thurston agreed to provide installation, maintenance, and training on Avaya Systems for ScanSource in exchange for

monetary compensation. ScanSource explains that it entered the agreement with Thurston in order to enable it to uphold its obligations pursuant to ScanSource's subcontract with Alliance Technology, LLC. (ECF No. 17 ¶¶ 14-15). Alliance Technology, in turn, had been awarded phase 1 of Verizon Communications, Inc.'s "Verizon Aberdeen End-State Installation contract." (*Id.* ¶¶ 13-14).

The subcontracting agreement between ScanSource and Thurston included a Non-Compete Clause that stated:

> During the term of this Agreement and for a period of one year following the expiration of this Agreement, Contractor shall not serve, represent, market or promote for any competitors of the Company, including without limitation the following businesses: _____ or to any customers of the Company without the prior written authorization of the Company. Contractor shall not for any reason on Contractor's own behalf or on behalf of any person, firm, partnership, association, corporation, limited liability company or business organization, entity or enterprise, other than the Company, solicit, contact, or call upon any customer or prospective customer of the Company, or any representative of any customer or prospective customer of the Company, with a view to sell or provide any deliverable or service competitive with any deliverable or services sold or provided or under development by the Company during this agreement and for the year immediately following the termination of this Agreement, provided that the restrictions as set forth in this paragraph shall apply only to customers or prospective customers of the Company, or representatives of customers or prospective customers of the Company, with

>     which Contractor had contact during the term
>     of this Agreement as a result of being
>     retained by the Company.
>
>     Each of the parties hereto agrees that,
>     while performing Services under this
>     Agreement, and for a period of two years (24
>     months) following the termination of this
>     Agreement, neither party will, except with
>     the other party's written approval, solicit
>     or offer employment to the other party's
>     employees or staff engaged in any efforts
>     under this Agreement.

(*Id.* ¶ 11; *see also* ECF No. 18-1 ¶ 5).  The agreement also included an integration clause and a provision specifying that the agreement should be construed in accordance with the laws of the state of South Carolina.  (ECF No. 18-1 ¶¶ 12-13).

During the performance of the agreement, Thurston "provided . . . installation services for telephone systems and related systems and software."  (ECF No. 17 ¶ 24).  In the course of performance, ScanSource alleges that Thurston "was made aware of ScanSource's business practices and that Verizon does business with and is a customer of ScanSource" in part because Thurston performed work on the Verizon Aberdeen contract, phase 1, for ScanSource.  (*Id.* ¶¶ 26-27).  ScanSource maintains that "at all times during the Agreement, Verizon was and is a prospective customer of ScanSource" and that "Verizon is a direct and indirect customer of ScanSource and its subsidiaries and/or affiliates."  (*Id.* ¶¶ 21, 25).  In particular, ScanSource performed work for Verizon doing business as "Catalyst Telecom"

and attached a copy of an invoice from Catalyst Telecom to Verizon from April 13, 2010. (*Id.* ¶ 22, Ex. 1).

ScanSource further alleges that "[d]uring the performance of and because of the Agreement, The Thurston Group learned of Verizon's requests for bids for the Verizon Aberdeen contract, Phase 2." (*Id.* ¶ 18). Thurston submitted a bid to Verizon for the contract, was selected, and has begun work for Verizon. (*Id.* ¶¶ 19-20, 33, 35). Alliance Technology also submitted a bid for phase 2, but it was not selected. (*Id.* ¶¶ 17, 34). ScanSource maintains that because its business partner, Alliance Technology, was not awarded phase 2 of the Aberdeen contract, ScanSource lost business that it would have derived from Aberdeen's contract amounting to approximately $559,000.00. (*Id.* ¶¶ 35-36).

On January 31, 2011, ScanSource sent a cease-and-desist letter to Thurston via email advising Thurston that its activities in connection with phase 2 of the Verizon Aberdeen contract constituted a breach of the parties' agreement. Thurston did not respond, and on February 11, 2011, ScanSource filed its initial complaint in this court asserting claims for breach of contract, unfair competition, and tortious interference with economic relations. (ECF No. 1). Thurston filed a motion to dismiss all counts pursuant to Fed.R.Civ.P.

12(b)(6) on March 10, 2011, and the motion was granted on May 18, 2011.  (ECF Nos. 6, 15, 16).

ScanSource subsequently filed an amended complaint asserting only two breach of contract claims.  (ECF No. 17).  In count I, ScanSource alleges that Thurston violated the non-compete clause by "contacting Verizon to serve, represent, market and/or promote its services regarding the Verizon Aberdeen contract, Phase 2, and by not obtaining written authorization from ScanSource to do so."  (*Id.* ¶ 41).  In count II, ScanSource alleges that Thurston violated the non-compete clause by contacting Verizon "with a view to sell or provide a deliverable or service competitive with any deliverable or services sold by or provided by ScanSource."  (*Id.* ¶ 49). Thurston filed a motion to dismiss the amended complaint on June 17, 2011.  (ECF No. 18).  ScanSource opposes.  (ECF No. 19).

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that

the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

### III. Analysis

Thurston argues that ScanSource's amended complaint should be dismissed for two reasons.  First, Thurston contends that the non-compete clause, upon which both of ScanSource's counts are premised, is unenforceable as a matter of law.  (ECF No. 18, at 5).  Second, Thurston argues that ScanSource has failed to state a plausible claim for breach of contract because the alleged facts fail to establish that Verizon is a current or prospective customer of ScanSource.  (*Id.* at 17).  ScanSource argues in response that it would be premature for the court to rule on the enforceability of the non-compete clause at this time because the parties have not had an opportunity to develop the facts necessary for the court's decision.  (ECF No. 19, at 10-11).  ScanSource also maintains that it has pled adequate facts to sustain its breach of contract counts.

### A.   Enforceability of Non-Compete Clause

Both parties agree that the enforceability of the non-compete clause should be determined in accordance with South Carolina law.  (ECF No. 17 ¶ 7; ECF No. 18, at 6).  Under South

Carolina law, a non-compete clause must satisfy five requirements to be enforceable. The clause must be:

> (1) necessary for the protection of the legitimate interest of the employer;
> (2) reasonably limited in its operation with respect to time and place;
> (3) not unduly harsh and oppressive in curtailing the legitimate efforts of the employee to earn a livelihood;
> (4) reasonable from the standpoint of sound public policy; and
> (5) supported by valuable consideration.

*Stringer v. Herron*, 424 S.E.2d 547, 548 (S.C.Ct.App. 1992) (citing *Rental Uniform Serv. of Florence, Inc. v. Dudley*, 301 S.E.2d 142, 143 (S.C. 1983)). Although cases involving the enforceability of non-compete clauses "must be decided on their own facts," *Wolf v. Colonial Life & Accident Ins. Co.*, 420 S.E.2d 217, 223 (S.C.Ct.App. 1992), once facts are determined, the enforceability of the clause is a matter of law to be determined by the court, *Stringer*, 424 S.E.2d at 548. In the employment context, covenants not to compete are generally disfavored and will be construed strictly against the employer. *Id.* (citing *Dudley*, 301 S.E.2d at 142; *Almers v. S.C. Nat'l Bank*, 217 S.E.2d 135, 140 (S.C. 1975)). Although no case has explicitly stated this point, there is less justification for skepticism where both parties to the non-compete clause are established business entities and there is no evidence of a bargaining imbalance between the two entities.

With respect to the first requirement, Thurston argues that the non-compete clause as written is too broad to be classified as necessary to protect ScanSource's legitimate business interests. In so arguing, Thurston relies on a case from the United States District Court for the District of South Carolina, *Fournil v. Turbeville Ins. Agency, Inc.*, No. 3:07-3836-JFA, 2009 WL 512261 (D.S.C. Mar 2, 2009).[1] In *Fournil*, the applicable covenant not to compete barred a former insurance agent of defendant Turbeville from soliciting or attempting to solicit insurance business from any customer or account on the books of Turbeville at the time of the agent's employment. *Id.* at *4. The court began its analysis by noting that companies only have a legitimate interest in preventing unfair competition; they cannot utilize covenants not to compete to prevent ordinary competition. *Id.* at *5. In the context of the insurance agent, the court explained that the company had a legitimate interest in preventing former employees from exploiting the company's goodwill, even if the goodwill was derived in part from the employees' work contributions. *Id.* The court concluded that Turbeville's covenant was overly restrictive because, by

---

[1] Thurston cites to the opinion of Magistrate Judge Paige Gossett, 2008 U.S. Dist. LEXIS 116469 (D.S.C. Dec. 28, 2008) providing a report and recommendation. This opinion cites to the opinion of United States District Judge Joseph F. Anderson, Jr. adopting the recommendations of Magistrate Judge Gossett. *Fournil v. Turbeville Ins. Agency, Inc.*, No. 3:07-3836-JFA, 2009 WL 512261 (D.S.C. Mar 2, 2009).

preventing the agent from soliciting business from current or former clients for whom the agent had no special knowledge or relationship, the covenant extended to situations where goodwill siphoning concerns did not exist. *Id.*

The *Fournil* court's concern does not apply to the non-compete clause at issue here. ScanSource's non-compete clause expressly limits its application to "customers or prospective customers of [ScanSource] . . . with which [Thurston] had contact during the term of this Agreement as a result of being retained by [ScanSource]." (ECF No. 18-1 ¶ 15). The non-compete clause may be overbroad for other reasons, but because Thurston has offered no other reasons in its motion the analysis stops here.

Thurston next argues that the non-compete clause is unenforceable because it lacks a geographic restriction and it cannot be modified by the court to impose one. (ECF No. 18, at 9 (citing *Stonhard, Inc. v. Carolina Flooring Specialists, Inc.*, 621 S.E.2d 352 (S.C. 2005)); *see also Poynter Invs. v. Century Builders of Piedmont, Inc.*, 694 S.E.2d 15, 18 (S.C. 2010) ("[I]n South Carolina, the restrictions in a non-compete clause cannot be rewritten by a court or limited by the parties' agreement, but must stand or fall on their own terms."). While as a general rule covenants not to compete must have an appropriate geographic limitation, "prohibitions against

contacting existing customers can be a valid substitute for a geographic limitation." *Wolf*, 420 S.E.2d at 222 (citing *Caine & Estes Ins. Agency, Inc. v. Watts*, 293 S.E.2d 859 (S.C. 1982); *Oxman v. Profitt*, 126 S.E.2d 852 (S.C. 1962)). The covenant at issue in the case relied on by Thurston did not apply only to existing customers. *See Stonhard*, 621 S.E.2d at 353.[2] As noted above, however, the covenant in ScanSource's agreement was limited to customers that Thurston encountered in its work pursuant to the agreement. As a result, the agreement's failure to include a geographic limitation does not render it unenforceable.

Next, Thurston argues that the non-compete clause is unduly harsh and oppressively curtails its legitimate efforts to earn a livelihood, primarily because the agreement does not contain a list of ScanSource's current customers and there is no viable way for Thurston to know what companies it was prohibited from serving, representing, marketing, promoting, soliciting,

---

[2] The covenant in *Stonhard* provided:

> During my employment with Stonhard, and for a period of one (1) year subsequent to termination of employment with Stonhard, regardless of the reason for such termination, I shall not compete with Stonhard by engaging in any activity similar to the activities I undertake during the course of my employment with Stonhard.

*Id.*

contacting, or calling upon. (ECF No. 18, at 12). Thurston further implies that it could not have known Verizon was a customer and states that it "undoubtedly had contact with innumerable persons and entities" in the course of performance. (*Id.* at 13). In response, ScanSource argues that the number of ScanSource customers or prospective customers that Thurston encountered is a discoverable fact. (ECF No. 19, at 15-16). Likewise, ScanSource maintains that the actual impact of the non-compete clause on Thurston's business prospects and viability is discoverable. Because the parties have not begun discovery, ScanSource insists that it would be premature to rule on the enforceability of the non-compete, and in particular whether it is unduly harsh to Thurston, now. (*Id.* at 18).

At this early stage of the litigation it would be improper to state as a matter of law that the covenant is unduly harsh. Considering only the facts alleged in the complaint, it is unclear how many customers Thurston may have encountered. Only two are specifically identified—Verizon and Alliance Technology. Thurston's argument that it did not know Verizon was a customer of ScanSource is a factual argument that cannot properly be considered at this time. For similar reasons, it cannot be determined from the alleged facts whether the non-compete clause is reasonable from the standpoint of sound policy.

In sum, at this point Thurston has not demonstrated that the non-compete clause is unenforceable, and the complaint will not be dismissed on that basis.

### B.   Failure To State A Claim

Thurston also seeks dismissal of both counts on the ground that the complaint allegations do not establish that Verizon was a customer of ScanSource and thus do not allege adequate facts to state a breach of contract claim.

In fact the amended complaint does allege that "Verizon is a direct and indirect customer of ScanSource and its subsidiaries and/or affiliates," (ECF No. 17 ¶ 21), "at all times during the Agreement, Verizon was and is a prospective customer of ScanSource," (*id.* ¶ 25), and that "ScanSource (d/b/a Catalyst Telecom) performed work for Verizon during performance of the Agreement," (*id.* ¶ 22).  The complaint also alleges that Thurston learned that Verizon was a customer of ScanSource and had contact with Verizon during the performance of the agreement.  (*Id.* ¶¶ 26-27).  These are all factual allegations and not legal conclusions.  While Thurston may wish that ScanSource had included additional facts explaining the nature of its customer relationship with Verizon, the allegations are adequate to state breach of contract claims.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendant The Thurston Group will be denied. A separate order will follow.

                                                                              /s/
                                       DEBORAH K. CHASANOW
                                       United States District Judge